IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLEN R. WILLIAMS AND DEBORAH WILLIAMS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-1622-BH |
| THE BANK OF NEW YORK MELLON, f/k/a The Bank of New York, as Trustee for the Holders of the GE-WMC Asset Backed Pass-Through Certificates, Series 2005-1, | § § § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's *Order of Reassignment*, filed January 21, 2010, and the consent of the parties, this matter was transferred for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court is *Defendant's Motion for Summary Judgment*, filed May 23, 2010, (doc. 22). Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED**.

### I. BACKGROUND

This suit arises out of a foreclosure of real property jointly owned by Glen R. Williams ("Mr. Williams") and his wife Deborah Williams ("Mrs. Williams") (collectively "Plaintiffs"). On July 20, 2005, Plaintiffs obtained a loan from WMC Mortgage Corporation ("WMC") evidenced by an adjustable rate note. (Mot. App., Ex. 1-A.) To secure the note, Plaintiffs executed a deed of trust identifying themselves as the borrowers and WMC as the lender. (Mot. App., Ex. 1-B, pp. 1-2.) The deed of trust named Joe E. Shaw as the trustee and conveyed the property to him in trust with power

of sale.  (*Id.* at 2-3.)  It provided that the rights and duties of the trustee could be performed by one or more trustees acting alone or together, and that the lender could remove or substitute any trustee, add one or more trustees, or appoint a successor trustee with just a designation in writing.  (*Id.* at 14, ¶ 24.)  The substitute, additional, or successor trustee then became vested with the title, rights, remedies, powers, and duties conferred on the trustee by the deed of trust and applicable law.  (*Id.*)

The deed of trust named Mortgage Electronic Registration Systems Inc. ("MERS") beneficiary of the security instrument solely as nominee for the lender and the lender's successors and assigns.  (*Id.* at 2.)  It provided that MERS only held legal title to the property, but as nominee could exercise other rights under the instrument, including but not limited to, foreclosing and selling the property.  (*Id.* at 3.)  It also provided that the note and the deed of trust could be sold one or more times without prior notice to the borrower, and that the sale could result in a change in the loan servicer – an entity that collects periodic payments due under the note and performs other mortgage loan servicing obligations.  (*Id.* at 14.)

The deed of trust allowed the lender – i.e., any holder of the note entitled to receive payments under the note – to accelerate the loan and require immediate payment in full of the secured loan if the borrower breached a covenant or agreement in the deed of trust.  (*Id.* at 13-14, ¶ 22.)  However, the lender had to give the borrower notice specifying the default, the action required to cure the default, a date by which the default must be cured, and notice that failure to cure the default would result in acceleration.  (*Id.*)  If the lender invoked the power of sale, the lender or the trustee had to give notice of the time, place, and terms of sale by posting and filing the notice at least twenty-one days prior to the sale as provided by applicable law.  (*Id.* at 14, ¶ 22.)  The lender also had to give notice to the borrower in the manner provided by applicable law.  (*Id.*)  The lender or its designees

could purchase the property at any sale, and the trustee had to convey to the purchaser indefeasible title to the property through a trustee's deed. (*Id.*)

On November 5, 2008, Barrett Daffin Frappier Turner & Engel, LLP ("Barrett"), sent Plaintiffs a letter notifying them that they had defaulted on the loan, that MERS had elected to accelerate the debt, and that the obligors and guarantors of the debt had the right to reinstate the loan pursuant to the deed of trust and Texas law. (Mot. App., Ex. 1-E, p. 1-3.) Barrett also enclosed a "notice of substitute trustee sale." (*Id.*) Both documents identified Barrett as the law firm representing Litton Loan Servicing, L.P. ("Litton"), and "a debt collector attempting to collect a debt." (*Id.*) They identified Litton as the mortgage servicer for MERS, MERS as the original and current mortgagee, and P. Maris, L. Patton, R. Alcorn, and M. Lanier as substitute trustees. (*Id.*)

On December 12, 2008, the Bank of New York Melon (the "Bank")[1] executed a document assigning the note and deed of trust to MERS as nominee for lender and lender's successors and assigns. (Mot. App., Ex. 1-C.) The document listed Joe E. Shaw as the trustee, the Bank as the assignor, Litton Loan Servicing LP ("Litton") as the Bank's attorney in fact, MERS as the assignee, and the effective of date the assignment as October 28, 2008. (*Id.*) On January 6, 2009, the Bank purchased the property at a foreclosure sale. (Mot. App., Ex. 1-D.) The substitute trustee's deed transferring the property identified MERS as the original and "current" mortgagee, L. Patton as the substitute trustee, and Litton as the mortgage servicer. (*Id.*)

On April 23, 2009, Mr. Williams sued the Bank for breach of contract, violation of the Texas Debt Collection Act ("TDCA"), violation of the Texas Deceptive Trade Practices Act ("DTPA"), and wrongful foreclosure. (*See* docs. 1 & 34.) He alleged that the Bank breached the

---

[1] The Bank was known as the Bank of New York at the time.

contract by issuing and posting notices of trustee's sale in violation of the deed of trust, by failing to deliver the notices of default and opportunity to cure, and of substitute trustee's sale in the form and manner provided by law, and because they never received notice of the substitute trustee's sale. (*Id.*) As for his TDCA claims, Mr. Williams alleged that the Bank failed to give notices complying with Tex. Prop. Code §§ 51.002(b) and (d), and 51.0025(2); collected or attempted to collect interest or a charge, fee or expense neither expressly authorized by the agreement nor legally chargeable to Plaintiffs in violation of Tex. Fin. Code §392.303(a)(2); and misrepresented the character, extent, or amount of a consumer debt in violation of Tex. Fin. Code § 392.304(a)(8). (*Id.*) He asserted that they were also entitled to recover for these violations under the DTPA. (*Id.*) Under his wrongful foreclosure claim, Mr. Williams incorporated the allegations underlying the rest of his claims and alleged that the foreclosure was wrongful because the Bank did not comply with applicable Texas statutory provisions, violated the TDCA and DTPA, lacked legal standing to pursue, conduct, or bid in the trustee's sale, and threatened to and did wrongfully foreclose on the property. (*Id.*) He also sought damages, injunctive relief, and a declaratory judgment. (*Id.*)

On May 23, 2010, the Bank moved for summary judgment on all of Mr. Williams'[2] claims and attached as evidence the note, the deed of trust, the written assignment of the note and deed of trust, the substitute trustee's deed, the debt collection letter with the notice of substitute trustee's sale, certified mail summary, and proof of postmark. (*See* doc. 22.) Mr. Williams filed a response on June 14, 2010, and attached a document entitled "Appointment of Substitute Trustee" in which MERS, as nominee for lender and lender's successors and assigns, purportedly appointed Maris, Paton, Alcorn, and Lanier as substitute trustees to the original trustee. (*See* doc. 27.) On June 23,

---

[2] Mr. Williams joined Mrs. Williams as a plaintiff on July 19, 2010, after the motion for summary judgment was filed. (*See* doc. 34.)

2010, the Bank filed a reply (doc. 30). The motion is now ripe for determination.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden,

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### III. EVIDENTIARY CONSIDERATIONS

The Bank objects that the exhibit entitled "Appointment of Substitute Trustee" allegedly on file with the Dallas County Clerk's office is unauthenticated hearsay. (Reply Br. at 3.) It argues that the document is an out-of-court statement offered to prove the truth of the matter asserted and is not a certified copy of a public record. (*Id.*) Mr. Williams does not specifically address this objection, but points out in his response brief that the instrument is recorded in the "Official Public Records of the Clerk of Dallas County." (Resp. Br. at 5, n. 11.)

The exhibit constitutes inadmissible hearsay because it is an out-of-court statement offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801 and 802. Even if it is subject to the public records exception embodied in Fed. R. Evid. 803(8), the exhibit would be inadmissible if there is no evidence of authentication. Under Fed. R. Evid. 901(a), authentication or identification is a condition precedent to admissibility. While Rule 901 does not require conclusive proof of authenticity, it requires at least some evidence sufficient to support a finding that the evidence in question is what the proponent claims it to be. *See United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993). For public records, evidence that a writing is from the public office where items of such

nature are kept is sufficient to find authentication. Fed. R. Evid. 901(b)(7). A public record is also admissible if it is self-authenticating, for example, when it constitutes a public document under seal or is certified by its custodian or other qualified person. *See* Fed. R. Evid. 902.

Mr. Williams does not provide any evidence of authentication for the document he submits as evidence. The document itself states that it is an unofficial copy. *See* Fed. R. Evid. 803(8). It is not under seal, certified, or accompanied by evidence that it is from a public office where such records are kept. Since the exhibit lacks authentication, the Bank's objection is **SUSTAINED**.[3]

## IV. ANALYSIS

The Bank moves for summary judgment on all of Mr. Williams' claims on grounds that it was not the party that conducted the foreclosure sale, was not the mortgagee at the time of the foreclosure sale, and was merely a purchaser at the foreclosure sale. (Mot. Br. at 1.) The Bank asserts that MERS, who was assigned the note and the deed of trust on October 28, 2008, was the party that foreclosed upon the property and the owner at the time of the foreclosure sale. (*Id.* at 2.) Based on these assertions, the Bank argues that it did not cause Mr. Williams' alleged damages. (*Id.* at 3.) The Bank also moves for summary judgment on grounds that Mr. Williams cannot produce any evidence to support his alleged causes of action. (*Id.*)

**A.     Breach of Contract Claim**

Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the Plaintiff as a result of the breach." *Smith Int'l.,Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted). "A breach occurs when a

---

[3] The Court notes that consideration of this document would not change the disposition of this motion.

party fails or refuses to do something he has promised to do." *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.–Houston [1st Dist.] 2003, pet. denied).

Mr. Williams alleges in his complaint that the Bank breached the contract by issuing and posting notices of trustee's sale in violation of the deed of trust, by failing to deliver the notices of default and opportunity to cure, and of substitute trustee's sale in the form and manner provided by law, and because Plaintiffs never received notice of the substitute trustee's sale. (*See* doc. 1 & 34.) As discussed earlier, the deed of trust made only the lenders and trustees responsible for providing the appropriate notices. (Mot. App., Ex. 1-B, p. 13-14, ¶ 22.) The Bank provides evidence showing that it assigned the note and the deed of trust to MERS effective October 28, 2008; the notices were sent on behalf of Litton, MERS's mortgage servicer, in November 2008; it bought the property at a foreclosure sale in January 2009; and parties other than itself were listed as trustees in the deed of trust, in the document assigning the deed of trust to MERS, and the notices sent to Plaintiff. The Bank has met its summary judgment burden by providing evidence showing that it was not the mortgagee or the trustee at the time the notices were sent and at the time of the foreclosure sale, and was merely a purchaser at the foreclosure sale.

The Bank also argues that Mr. Williams cannot provide any evidence to support his cause of action. Where, as here, the non-movant bears the burden of proof, the movant's burden may be discharged by pointing out to the Court that there is an absence of evidence to support the non-movant's case. *Celotex*, 477 U.S. at 325. To defeat the motion for summary judgment, the non-movant must then direct the Court's attention to facts that support all the essential elements of his claim. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). "[I]f the non-movant fails to present sufficient facts to support an essential element of his claim, summary judgment is

appropriate." *Id.* (citing *Celotex*, 477 U.S. at 322-23).

The burden now shifts to Mr. Williams to identify evidence sufficient for a reasonable jury to conclude that the Bank was a trustee or lender at the time the notices were sent and at the time of the foreclosure sale, and point out evidence supporting each of the elements of his breach of contract cause of action. Mr. Williams points out that the Bank executed the assignment to MERS on December 12, 2008, even if the assignment instrument lists the effective date of assignment as October 28, 2008. (Resp. Br. at 2.) He argues that the November 2008 unsigned notices[4] therefore were plainly sent on behalf of the Bank, who had not by that time executed a transfer of lien to MERS as its nominee. (*Id.* at 3.)

Mr. Williams provides no authority in support of his argument that the assignment became effective on the date of execution and not on the earlier date. *See Anderson*, 477 U.S. at 248 ("the substantive law will identify which facts are material"); *Ragas*, 136 F.3d at 458 (the party opposing summary judgment must identify specific evidence in the record and "articulate the precise manner in which that evidence supports his or her claim"). Additionally, he does not identify evidence sufficient to create a genuine issue of material fact that the Bank was the lender or trustee when the notices were sent or at the time of the foreclosure sale. He therefore has failed to meet his burden to show a genuine issue of material fact, and summary judgment is appropriate on his breach of contract claim.

**B.  TDCA and DTPA Claims**

Under the TDCA, a consumer may sue a debt collector attempting to collect a debt for

---

[4]  Even though Tex. Prop. Code § 51.002 requires that certain notices be sent in the foreclosure proceedings, there is no requirement that the notices be signed. *See Connally v. Countrywide Home Loans Inc.*, 2010 WL 746429, at *4 (Tex. App.–Texarkana Mar. 5, 2010).

"threats, coercion, harassment, abuse, unconscionable collection methods, or misrepresentations made in connection with the collection of a debt." *T & S Auto Sales Inc. v. Anderson*, No 03-99-00354, 2000 WL 140395, at *1 n.2 (Tex. App.–Austin Feb. 3, 2000) (citing Tex. Fin. Code. Ann. §§ 392.301-392.404). A violation of the TDCA is also actionable under the DTPA, which allows a civil action for false, misleading, or deceptive acts taken in the conduct of trade or commerce. *Id.* at nn.1 & 2 (citing Tex. Fin. Code Ann. § 392.404 and Tex. Bus. & Com. Code Ann. §§ 17.41-17.63).

Mr. Williams alleges that the Bank failed to give notices complying with Tex. Prop. Code §§ 51.002(b) and (d), and 51.0025(2); collected or attempted to collect interest, charge, fee, or expense neither expressly authorized by the agreement nor legally chargeable to him in violation of Tex. Fin. Code §392.303(a)(2); and misrepresented the character, extent, or amount of a consumer debt in violation of Tex. Fin. Code § 392.304(a)(8). He asserts that he can also recover for these violations of the TDCA through the DTPA. To meet its summary judgment burden, the Bank provides evidence showing that Barrett, on behalf of MERS, was the debt collector attempting to collect the debt and the party who sent the notices at issue. The Bank also argues that Mr. Williams cannot provide any evidence to support his asserted cause of action.

The burden now shifts to Mr. Williams to identify evidence creating a genuine issue of material fact as to his TDCA and DTPA causes of action. As before, Mr. Williams does not provide evidence sufficient for a reasonable jury to conclude that the Bank was the mortgagee or trustee during the foreclosure proceedings. He also does not identify evidence sufficient to create a genuine material fact issue as to all the elements of his TDCA and DTPA claims, particularly evidence that the bank was a debt collector attempting to collect a debt. Since Mr. Williams has failed to meet

his burden and create a genuine material fact issue, summary judgment is appropriate on his TDCA and DTPA claims as well.

**C.      Wrongful Foreclosure**

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, or unfairness in the conduct of a foreclosure sale. *See In re keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex.Jur.3d Deeds of Trusts and Mortgages § 177 (1998)). "The trustee may conspire with a potential buyer to secure for that buyer the lowest bid or the mortgagee may take actions that chill the bidding in an attempt to secure the lowest price for itself." *Id.* at 921-22. Texas law seeks to combat these practices through Tex. Prop. Code Ann. § 51.002 and through the common law action of wrongful foreclosure. *See In re Keener*, 268 B.R. at 922. The statutory provision applies to mortgagees and trustees conducting the sale of real property under a contract lien, and requires compliance with its requirements in the conduct of the sale. Tex. Prop. Code Ann. § 51.002 ; *Kainer v. ABMC Corp.*, 2006 WL 407794, at *3 n.2 (Tex. App.–Houston [1st Dist.] Feb. 3, 2006). The common law action also applies to mortgagees and trustees, *see id* at *5, and requires a debtor to show a defect in the foreclosure sale proceedings which resulted in a grossly inadequate sale price. *See Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975).

Mr. Williams alleges that the foreclosure was wrongful because the Bank did not comply with applicable Texas statutory provisions, violated the TDCA and DTPA, lacked legal standing to pursue, conduct, or bid in at the trustee's sale, and threatened to and did wrongfully foreclose on the property at issue. The Bank provides evidence showing that it was not the mortgagee or the party who conducted the foreclosure sale, and was merely a purchaser at the foreclosure sale. The Bank also argues that Mr. Williams cannot provide any evidence to support his wrongful foreclosure

action. The Bank has met its summary judgment burden.

Mr. Williams does not proffer evidence sufficient for a reasonable jury to conclude that the Bank was the mortgagee or trustee during the foreclosure proceedings, or the party conducting the foreclosure sale. He also does not identify specific evidence supporting each of the elements of his wrongful foreclosure claim. Since he has failed to create a genuine issue of material fact as to his wrongful foreclosure claim, summary judgment is appropriate on that claim as well.

## V. CONCLUSION

Based on the relevant filings, evidence, and applicable law, *Defendant's Motion for Summary Judgment* is **GRANTED**, and all of Mr. Williams' claims against the Bank are dismissed with prejudice.

**SO ORDERED** on this 23rd day of August, 2010.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE